UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

               Plaintiff,

         -against-                          17 Cr. 753 (CS)
RAYMOND GILKES, et al.,

               Defendants.

-----------------------------------------------------------X

## SENTENCING MEMORANDUM

Respectfully submitted:

Neil B. Checkman, Esq.
115 Broadway, Suite 1704
New York, NY 10006
(212) 264-9940
Neil@checkmanlaw.com

To:  Hon. Cathy Seibel
      United States District Judge
      Southern District of New York
      300 Quarropus Street
      White Plains, NY 10601

      Clerk of the Court
      United States District Court
      Southern District of New York
      300 Quarropus Street
      White Plains, NY 10601

      Hon. Geoffrey S. Berman
      United States Attorney
      Southern District Of New York
      One St. Andrews Plaza
      New York, NY 10007
      Att: A.U.S.A. Celia V. Cohen

115 Broadway, Suite 1704
New York, NY 10006
212.264.9940
Fax: 212.898.1187
neil@checkmanlaw.com

www.checkmanlaw.com
www.whitecollarcrimesnyc.com

LAW OFFICES OF NEIL B. CHECKMAN, ESQ.

December 24, 2018

Hon. Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropus Street
White Plains, NY 10601

                **Re: United States v. Raymond Gilkes, et al.,**
                          **17 Cr. 753 (CS)**

Dear Judge Seibel:

      The following constitutes Raymond Gilkes's Sentencing Memorandum:

**Offense of Conviction**

      On October 19, 2018, Raymond Gilkes entered a plea of guilty to Count One of the above-referenced Indictment. By this plea, Mr. Gilkes accepted responsibility for distributing and possessing with the intent to distribute 28 grams and more of crack cocaine and 500 grams and more of powder cocaine.

**Legal Standard at Sentencing**

      "The [sentencing] statute, as modified by Booker, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing...'" Kimbrough v. United States, 552 U.S. 85,101 (citing, 18 U.S.C.§3553(a)); United States v. Booker, 543 U.S. 220 (2005).

      After the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," (18 U.S.C.§3553(a)(1)) the Court is directed by the statute to consider "the need for the sentence imposed–

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

Hon. Cathy Seibel
December 24, 2018
Page 3

      (B) to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;..." 18 U.S.C. §3553(a)(2).

The sentencing Court, after reviewing the pre-sentence report, should consider the arguments of counsel for the defendant and the government as to whether or not the guidelines should apply. "In determining the merits of those arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." United States v. Rita, 551 U.S. 338, 351 (2007), citing, United States v. Booker, 543 U.S. at 259-260 (2005).

While beginning with the guidelines calculation as an initial starting point, the sentencing court must recognize that the guidelines are "not the only consideration", and must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable." United States v. Gall, 552 U.S. 38, 49-50 (2007) see also, Rita, 551 U.S. at 351.

Instead, the sentencing Court has the discretion to conclude that a guidelines sentence reflects an unsound judgment because it fails to reflect § 3553(a) considerations, does not treat the defendant's history and characteristics in the proper way, or that a different sentence is appropriate under the unique circumstances in each case, (See, Rita, 551 U.S. at 357)

**History and Characteristics of Raymond Gilkes**

Raymond Gilkes was born on October 20, 1986 to the union of Robert Easterling, a 66 year-old retired custodian for the Mt. Vernon school system, and Frances Gilkes, a 64 year-old unemployed former movie theater manager. Raymond reports that his father has been in and out of his life, but at present their relationship is "okay". Raymond's mother is supportive and actively involved in Raymond's life. She has attended all of Raymond's court appearances. Unfortunately, at the time of the writing of this memorandum, Frances Gilkes is back in the hospital. That said, she called the undersigned yesterday to check up on her son's case. Her continuing support, as well as the support of Ms. Ahmada Dixon and her family, bodes well for Mr. Gilkes' future.

Raymond's father, Robert Easterling, was an alcoholic through-out much of Raymond's upbringing, however he has been sober for the last ten to fifteen years. He was never arrested and he is healthy as far as Raymond knows.

Raymond reports a good relationship with his mother Frances. When Raymond was

Hon. Cathy Seibel
December 24, 2018
Page 4

younger, Frances abused alcohol, but she, too, has never been arrested. Her health is problematic as she suffers from severe back injuries, and had a hip replacement. Raymond believes that she receives disability payments and that his brother and sister help support her.

Raymond's siblings include his brother Robert Gilkes, who was shot and killed when Raymond was five years old, some 27 years ago. Raymond took the murder of his brother hard. Robert was a fire-fighter, and Raymond idolized him, wanting to grow up to be just like him.

Raymond has a half-sibling on his mother's side named Alfredo McLean, age 35, who resides in Atlanta, Georgia, and a sister named Gina McLean, age 37, who resides in Atlanta as well, and is a manager at a housing complex. He also has a half-sibling on his father's side named Tammy Thomas who is in her 40s and resides in Charlotte, North Carolina.

Raymond's childhood was hard. Raymond grew up with Gina and Alfredo in New Rochelle, New York, until age 12, however, while they always had clothing and enough to eat, their neighborhood was rife with drugs, fights and shootings. According to the reports received by Probation from South Westchester BOCES in Rye Brook, Raymond functions intellectually at a borderline level, and his difficulties in school coupled with the atmosphere he grew up in, especially after he was sent to live apart from his siblings and mother, contributed to his low-level criminal involvement. Raymond recognizes that he got himself caught up in the life-style of the neighborhood–always to his own detriment.

**Raymond's Long-Term Relationship**

Mr. Gilkes has been in a fourteen year relationship with Ahmada Dixon, a 33 year-old woman who supports herself by driving a bus for Liberty Lines. Ms. Dixon, who has attended some of the court appearances, taking off of work to do so, is very supportive. Ms. Dixon has been in steady contact with counsel. The couple had been trying to conceive since they were 17 years old. Raymond reports that one of the primary reasons he was selling drugs was the couple's attempt to pay for in vitro insemination, as Raymond had no health insurance. They have no children, to date. , is that Raymond Gilkes is more than just a drug seller and drug abuser. He is a person who has found ways to give of himself to other's who were in need. This, despite having to deal with an affliction that is all too common in our society.

**Adjustment to Incarceration**

According to his pre-sentence report, Raymond has incurred no disciplinary violations while incarcerated at the Westchester County Correctional Facility. His exemplary behavior in jail is some evidence of his desire to rehabilitate himself.

Hon. Cathy Seibel
December 24, 2018
Page 5

**Sentencing Recommendation**

It is respectfully recommended that the Court sentence Raymond Gilkes to a term of incarceration of 60 months. Such a sentence, the mandatory minimum, will be sufficient, but not greater than necessary, to provide a just punishment for Raymond Gilkes's crimes, reflect the seriousness of those crimes, while providing a long-enough period for his rehabilitation through substance abuse treatment. We ask the Court to recommend the Bureau of Prisons' RDAP, intensive drug treatment program, and also to recommend that he serve his sentence as close to the New Rochelle area as possible to facilitate visitation by his ailing mother and Ms. Dixon.

This conviction constitutes the first felony that Mr. Gilkes has been charged with. While a string of arrests and convictions for petty crimes has boosted his criminal history category, only now has he been forced to confront what substance abuse has done to his life. He is a non-violent person who suffers from a long-standing multiple substance affliction. He has a strong support system, and most importantly, he has started to gain the insight necessary for that support system to aid in his rehabilitation. The first positive step came when he recognized that this arrest probably saved his life. Raymond clearly recognizes that his continued daily use of Percocet, sometimes taking four during one day, would have eventually led to his death.

Accordingly, counsel respectfully requests that the Court sentence Raymond Gilkes to the mandatory minimum sentence of five years (60 months) with an appropriate period of supervised release, and that the Court recommend that Raymond be allowed to participate in the Bureau of Prisons' RDAP intensive drug rehabilitation program at an institution as close to the New Rochelle area as possible.

Very truly yours,

/s/ Neil B. Checkman

Neil B. Checkman

/NBC
attachments